**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LINDA BLAIR, DIANE DEAL, and SHANNON COLLINS, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>THE CBE GROUP, INC.,<br><br>Defendant. | Case No.:   13cv134-MMA (WVG)<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION;**<br><br>[Doc. No. 140]<br><br>**DENYING DEFENDANT'S MOTION TO STRIKE EXPERT JEFFREY HANSEN DECLARATION;**<br><br>[Doc. No. 152]<br><br>**OVERRULING DEFENDANT'S EVIDENTIARY OBJECTIONS**<br><br>[Doc. No. 153] |

Plaintiffs Linda Blair, Diane Deal, and Shannon Collins (collectively, "Plaintiffs") bring this putative class action against Defendant The CBE Group, Incorporated ("Defendant"), alleging negligent, knowing and/or willful violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq*. Plaintiffs now move for certification of three proposed classes pursuant to Federal Rule of Civil Procedure 23.

1

*See* Doc. No. 140.  Defendant filed an opposition, to which Plaintiffs replied.  *See* Doc. Nos. 156, 166.  The Court found this matter suitable for determination on the papers without oral argument pursuant to Civil Local Rule 7.1.d.1.  For the reasons set forth below, the Court **DENIES** Plaintiffs' motion for class certification.

## BACKGROUND

Plaintiffs, on behalf of themselves and all others similarly situated, bring this putative class action alleging claims for (1) negligent violations of the TCPA and (2) knowing and/or willful violations of the TCPA pursuant to 47 U.S.C. § 227, *et. seq.*  Doc. No. 67.  Plaintiffs allege that they received unsolicited calls on their respective cellular telephones from Defendant, and that Defendant used an automatic telephone dialing system ("ATDS") or prerecorded voice to place the calls.  Plaintiffs further allege that the calls were not for emergency purposes, that they did not provide prior express consent to receive the calls, and that they continued to receive the calls even after instructing Defendant to stop.  According to Plaintiffs, Defendant has made in excess of 500,000,000 debt collection calls to consumers throughout the country during the putative class period.

Defendant is a business processing outsourcing organization that offers contact center solutions in the areas of first-party debt collections and third-party debt recoveries, in addition to various other services.  Defendant provides debt collection services to various industries, including utilities, satellite communications providers, cable television providers, and student loans.  Defendant is headquartered in Cedar Falls, Iowa, and employs 1,500 people throughout its seven global locations.  Defendant maintains that it is not liable for TCPA violations because its three types of dialing systems—Manual Clicker Application, Noble, and LiveVox—do not meet the definition of an ATDS, and it obtains prior express consent, including from all three Plaintiffs, to make such calls.

On January 16, 2013, Plaintiffs filed this putative class action on behalf of a nationwide class of individuals who received unsolicited phone calls from Defendant or its agents in violation of the TCPA.  *See* Doc. No. 1.  Plaintiffs now move to certify the

following three classes pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3):

> **Autodialer Class:** All persons within the United States to whom CBE placed a call to a cellular telephone through the use of any of CBE's LiveVox or Noble dialers without the recipients' prior express consent from January 16, 2009 through the present.
>
> **Prerecorded Voice Class:** All persons within the United States to whom CBE placed a call that was made to a cellular telephone number and featuring an artificial or prerecorded voice, without the recipients' prior express consent from January 16, 2009 to the present
>
> **Skip Trace Class:** All persons within the United States to whom CBE placed a call to a cellular telephone at a number that CBE did not obtain either prior express consent from the debtor, and that call was made using the LiveVox or Noble dialer or called featuring an artificial or prerecorded voice.[1]

*See* Doc. Nos. 140, 141. Defendant opposes class certification, and also moves to strike the declaration of Plaintiffs' expert filed in support of Plaintiffs' motion for class certification. *See* Doc. Nos. 152, 156. The matters have been fully briefed. *See* Doc. Nos. 164, 166, 169.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs the certification of a class. Fed. R. Civ. P. 23. "Parties seeking class certification bear the burden of demonstrating that they have met each of the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b)." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011). Here, Plaintiffs move for certification of three classes of call recipients under Rule 23(a) and 23(b)(3).[2]

---

[1] The Skip Trace Class reflects the definition as corrected in Plaintiffs' Motion to Correct Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Class Certification [Doc. No. 141]. Plaintiffs explained that their original motion for class certification [Doc. No. 140] contained an inadvertent error in the Skip Trace Class definition. In light of Plaintiffs' motion, the Court reset the briefing schedule to provide Defendant with ample time to address the corrected class definition. *See* Doc. No. 143. Thus, Plaintiffs' Motion [Doc. No. 141] is **GRANTED**.

[2] Although Defendant argues that certification is also improper under Rule 23(b)(2), it is clear from Plaintiffs' motion that they seek certification of the three proposed classes under Rules 23(a) and (b)(3)

Rule 23(a) requires a party seeking class certification to establish the following four elements:

> (1) that the class is so large that joinder of all members is impracticable (numerosity); (2) that there are one or more questions of law or fact common to the class (commonality); (3) that the named parties' claims are typical of the class (typicality); and (4) that the class representatives will fairly and adequately protect the interests of other members of the class (adequacy of representation).

*Id.* at 980 (citing Fed. R. Civ. P. 23(a)).  The United States Supreme Court has made clear that "Rule 23 does not set forth a mere pleading standard."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (hereinafter "*Dukes*").  Instead, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* (emphasis in original).

At the certification stage, district courts must "engage in a 'rigorous analysis' of each Rule 23(a) factor when determining whether plaintiffs seeking class certification have met the requirements of Rule 23." *Ellis*, 657 F.3d at 980.  "In many cases, that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* (internal citation and quotation omitted).  "[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class. More importantly, it is not correct to say a district court may consider the merits to the extent that they overlap with class certification issues; rather, a district court *must* consider the merits if they overlap with the Rule 23(a) requirements." *Id.* at 981 (emphasis in original).

---

only. *See* Plfs.' Mot. at 8 ("Accordingly, the proposed Classes easily satisfy the requisites to certification under Rule 23(a) and (b)(3)."); *id.* at 9 ("Accordingly and for the reasons explained below, Plaintiffs Blair, Deal, and Collins, on behalf of others similarly situated, respectfully move the Court for an Order certifying the Classes under Federal Rules of Civil Procedure 23(a) and (b)(3)."). Because Plaintiffs clearly seek certification pursuant to Rule 23(b)(3) only, the Court does not address whether certification would be proper under Rule 23(b)(2).

1  Once the prerequisites of Rule 23(a) are met, the Court must then determine whether the class action is maintainable under Rule 23(b). "Under Rule 23(b)(3), a class may be certified if the district court 'finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting Fed. R. Civ. P. 23(b)(3)). A central concern of the Rule 23(b)(3) predominance test is whether "adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001). "The party seeking certification bears the burden of demonstrating that he has met the requirements of Rule 23(b)." *Vinole*, 571 F.3d at 944 n.9.

## PRELIMINARY MATTERS

**A.  Defendant's Motion to Strike Expert Declaration**

As a preliminary matter, Defendant moves to strike the expert declaration of Jeffrey Hansen, filed in support of Plaintiffs' motion for class certification, on the grounds that it is untimely. Specifically, Defendant asserts that Plaintiffs failed to disclose their intent to rely on expert testimony by the scheduling order's discovery cutoff, and such failure is neither substantially justified nor harmless. Defendant further asserts that it is prejudiced by not having had the opportunity to depose Mr. Hansen, and cannot retain a rebuttal expert at this point in the litigation. In response, Plaintiffs assert that the deadline to disclose experts has not occurred yet because no trial date has been set in this matter. Alternatively, Plaintiffs argue that even if they had failed to properly disclose Mr. Hansen as an expert, such failure was substantially justified and harmless, and therefore does not warrant exclusion of Mr. Hansen's declaration.

Rule 26(a) of the Federal Rules of Civil Procedure requires parties to disclose the identity of any person who may be used as an expert witness. *See* Fed. R. Civ. P. 26(a)(2)(A). Rule 26 further provides that "[a] party must make these disclosures at the

times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made: (i) at least 90 days before the date set for trial or for the case to be ready for trial . . . ." Fed. R. Civ. P. 26(a)(2)(D). If a party fails to make disclosures as required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

"Generally '[t]he sanction of exclusion is . . . automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless.'" *Cont'l Lab. Products, Inc. v. Medax Int'l, Inc.*, 195 F.R.D. 675, 676 (S.D. Cal. 2000) (quoting *Finley v. Marathon Oil Co.,* 75 F.3d 1225, 1230 (7th Cir. 1996)). The party facing exclusion has the burden to prove its failure was substantially justified or harmless. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001). "The purpose of these rules is to encourage timely disclosure of expert witnesses and to curb dilatory litigation tactics." *Cont'l Lab. Products*, 195 F.R.D. at 676 (citing 7 James Wm. Moore et al., *Moore's Federal Practice* § 37.60[1] (3d ed. 1999)). In determining whether exclusion of evidence under Rule 37 is appropriate, courts consider the following factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Allen v. Similasan Corp.*, 306 F.R.D. 635, 640 (S.D. Cal. 2015) (internal citation and quotation marks omitted).

This dispute is yet another example of the parties' gamesmanship that has plagued discovery throughout this litigation, despite having received numerous admonitions and even sanctions from the Court.[3] To the extent Plaintiffs argue that the scheduling order

---

[3] *See, e.g.*, Doc. No. 115 at 3 ("The background section above makes clear that the parties in this matter have been, and will continue to be, engaged in litigation akin to trench warfare."); *id.* at 4 ("In this case, however, the lack of cooperation between the parties has hindered the Court's ability to

did not set a deadline for expert discovery, that argument is not well taken.  The scheduling order in this matter unambiguously states, "<u>All</u> discovery, including expert discovery, shall be completed on or before <u>January 21, 2015</u>."  Doc. No. 106 at 2, ¶ 4 (emphasis in original).  Had the Court intended anything other than for this deadline to apply to experts related to class certification discovery, it would not have included the phrase "***including expert discovery***" in its order.  The Court is also not persuaded by Plaintiffs' argument that they were substantially justified in not disclosing Mr. Hansen as an expert prior to the discovery cutoff date because of the complex discovery timeline in this case.  Any complexity in the discovery timeline, including the Court's imposing an operational pause and then resetting discovery, was a result of the parties' own making.  Finally, the Court is also not convinced by Plaintiffs' argument that their untimely disclosure was harmless because Mr. Hansen provided an expert report in a TCPA case against the same Defendant pending in the District of Nevada.  Another plaintiff's use of the same expert in a separate, unrelated case in a different district has no bearing on Plaintiffs' discovery obligations in this case.  However, upon reviewing Mr. Hansen's declaration as well as all pertinent matters of record, the Court finds that the inclusion of

---

efficiently address and resolve discovery disputes, and it has certainly frustrated the parties' attempts to litigate this case in a productive manner."); Doc. No. 122 at 1 ("From the beginning of this litigation, the parties have been engaged in uninterrupted conflict."); *id.* at 10 ("The Court was hopeful that the parties would have self-corrected their petulant, unproductive, and corrosive conduct. But they have not."); Doc. No. 130 at 1 ("Like the gladiators of ancient Rome, these parties have been locked in mortal combat from the beginning of this litigation."); *id.* at 2 ("At every turn the parties have failed to cooperate and engage in good faith meaningful meet and confer efforts in an attempt to resolve their differences.  The situation became so bad that the Court had to employ a rare, unusual, and reluctant tactic.  In an effort to reign the parties in and 'force' them to at least meet and confer, the Court ordered the parties to videotape their meet and confer session, which they did."); Doc. No. 132 at 2 ("The Court notes that if the parties focused on their discovery efforts rather than on bickering and gamesmanship, then there would be no need to discuss extending the deadlines."); Doc. No. 135 at 8 ("Counsel have been repeatedly admonished in this case that this Court will not tolerate gamesmanship."); Doc. No. 172 at 21 ("The Court is alarmed that these instances of non-compliance continue, despite all of its warnings, admonitions, and emphasis placed on the importance of the rules and its Orders."); *see id.* at 21–23 (imposing monetary sanction against Plaintiffs' counsel and Defense counsel in the amount of $500 per side for violations of Federal Rule of Civil Procedure 16, the Civil Local Rules, Judge Gallo's Chambers' Rules, court orders, and wasting the Court's time and resources).

Mr. Hansen's declaration does not prejudice Defendant, and therefore, in the interests of justice, the Court declines to strike Mr. Hansen's declaration. Accordingly, the Court **DENIES** Defendant's motion.

**B.     Evidentiary Objections**

Defendant has also filed numerous evidentiary objections on the grounds that certain evidence is untimely, lacks foundation, constitutes inadmissible hearsay, represents improper legal conclusions or opinion testimony, misstates testimony, is confusing or misleading, and contradicts sworn deposition testimony. In determining whether class certification is appropriate under Rule 23, courts "may consider all material evidence submitted by the parties . . . and need not address the ultimate admissibility of evidence proffered by the parties." *Coleman v. Jenny Craig, Inc.*, No. 11CV1301-MMA (DHB), 2013 WL 6500457, at *3 (S.D. Cal. Nov. 27, 2013) (citing *Gonzalez v. Millard Mall Servs.*, 281 F.R.D. 455, 459 (S.D. Cal. 2012)); *see also Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975); *Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 337 (N.D. Cal. 2010) ("On a motion for class certification, the Court may consider evidence that may not be admissible at trial."). As another court in this district has explained:

> Since a motion to certify a class is a preliminary procedure, courts do not require strict adherence to the Federal Rules of Civil Procedure or the Federal Rules of Evidence. *See Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178 (1974) (The class certification procedure "is not accompanied by the traditional rules and procedures applicable to civil trials."). At the class certification stage, "the court makes no findings of fact and announces no ultimate conclusions on Plaintiffs' claims." *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 519 (C.D. Cal. 2011), quoting *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 616 (C.D. Cal. 2008). Therefore, the Court may consider inadmissible evidence at the class certification stage. *Keilholtz v. Lennox Hearth Prods, Inc.*, 268 F.R.D. 330, 337 n.3 (N.D. Cal. 2010). "The court need not address the ultimate admissibility of the parties' proffered exhibits, documents and testimony at this stage, and may consider them where necessary for resolution of the [Motion for Class Certification]." *Alonzo*, 275 F.R.D. at 519.

*Gonzalez*, 281 F.R.D. at 459. In light of the lenient evidentiary standard that applies at

the certification stage, the Court **OVERRULES** Defendant's evidentiary objections for purposes of this motion. The Court reiterates that to the extent any evidence proffered by the parties constitutes a legal conclusion or lacks foundation, the Court will not consider such material. *See Coleman*, 2013 WL 6500457, at *3 (citing *Burch v. Regents of the University of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) ("Objections on any of these grounds are simply superfluous in this context.")). Further, Defendant's objections that certain arguments set forth in Plaintiffs' motion misstate testimony or contradict sworn testimony go to the weight, and not the admissibility, of the evidence.

## CLASS CERTIFICATION

Plaintiffs move for certification of three classes of TCPA violations—the Autodialer Class, the Prerecorded Voice Class, and the Skip Trace Class—pursuant to Rules 23(a) and 23(b)(3). According to Plaintiffs, this matter is suitable for class certification because the questions of (1) whether CBE made automated and/or prerecorded calls to class members, (2) whether CBE obtained consent to make the calls, and (3) whether class members suffered an injury as a result, are all capable of classwide resolution and turn on generalized proof applicable to the entire class. Specifically, Plaintiffs contend that Defendant has no documented record of consent within CBE's internal account system, and Defendant's internal records show that each of the calls were placed using the same autodialing system.

Defendant opposes certification on numerous grounds, including that Plaintiffs improperly raised these Class definitions for the first time in their certification motion, that all three definitions are "fail-safe" class definitions, that Plaintiffs fail to satisfy any of the Rule 23(a) requirements, and finally, that Plaintiffs fail to show common questions predominate under Rule 23(b)(3).

Upon careful review, the Court finds Rule 23(b)(3)'s predominance inquiry is dispositive in this matter, and therefore focuses its analysis on whether Plaintiffs have

demonstrated common issues predominate under Rule 23(b)(3).[4]

## A.     Predominance under Rule 23(b)(3)

Rule 23(b)(3) requires that "the questions of law or fact common to class members *predominate* over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3) (emphasis added).[5]  As the Supreme Court has recognized, "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)."  *Comcast Corp. v. Behrend,* 133 S. Ct. 1426, 1432 (2013).

"A principal purpose behind Rule 23 class actions is to promote efficiency and economy of litigation."  *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) (internal citation and quotation marks omitted).  "The predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)) (internal quotation marks omitted).  "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy."  *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1305–06 (D. Nev. 2014) (quoting *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)).  However, "[i]f the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action

---

[4] In light of the Court's conclusion that Plaintiffs have failed to demonstrate predominance under Rule 23(b)(3), the Court need not address all of the arguments raised in Defendant's opposition.  *See Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 577 (S.D. Cal. 2013) ("As the Court finds that Rule 23(b)(3)'s predominance requirement is dispositive of Plaintiffs' class certification motion, the Court does not address all of the parties' arguments, but rather focuses its analysis on this key issue.").

[5] Rule 23(b)(3) provides that the following factors are pertinent to this finding:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

would be inappropriate." *Zinser*, 253 F.3d at 1189.

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011). Here, Plaintiffs seek certification of three proposed classes for TCPA violations. To establish liability under the TCPA, the plaintiff must show that "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)(1)). "In TCPA actions, the predominance inquiry is satisfied only when Plaintiffs 'advance a viable theory employing generalized proof to establish liability with respect to the class involved.'" *Connelly*, 294 F.R.D. at 577 (quoting *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008)). Further, the predominance inquiry in TCPA actions often turns on whether individualized inquiries—rather than generalized proof applicable to the entire class—are required to demonstrate an individual class member's prior express consent. *See, e.g.*, *Stern v. DoCircle, Inc.*, No. 12cv2005 AG JPRX, 2014 WL 486262, at *8 (C.D. Cal. Jan. 29, 2014). "Although TCPA cases are not 'per se' unsuitable for class resolution, class certification is warranted only when the 'unique facts' of a particular case indicate that individual adjudication of the pivotal element of prior express consent is unnecessary." *Connelly*, 294 F.R.D. at 577 (quoting *Gene & Gene*, 541 F.3d at 326) (quotation marks omitted). Thus, "for purposes of class certification, [the party seeking certification] must prove that consent, or the lack thereof, can be resolved on evidence and theories applicable to the entire class." *Kristensen*, 12 F. Supp. 3d at 1306–07 (internal citation and quotation omitted).

However, courts should not simply accept a party's argument that consent requires individualized inquiries without evidence demonstrating consent is, in fact, an individualized issue. *See, e.g.*, *Meyer*, 707 F.3d at 1042; *Stern*, 2014 WL 486262, at *3 ("Based on the facts before it now, it does not appear that the Court will have to make

individualized determinations of consent. While such determinations would be necessary if the parties presented individualized evidence of consent, they haven't done so."). As another district court recently explained:

> The Ninth Circuit has held that in the absence of any evidence of consent by the defendant, consent is a common issue with a common answer. This does not necessarily mean that defendants have an affirmative burden to produce evidence of consent to prevail at trial, however. It simply means that courts should ignore a defendant's argument that proving consent necessitates individualized inquiries in the absence of any evidence that express consent was actually given. It also means that courts should afford greater weight to a plaintiff's theory of class-wide proof of lack-of-consent when that theory is entirely unrebutted by the precise type of evidence which could do it greatest harm—evidence of express consent.

*Kristensen*, 12 F. Supp. 3d at 1307 (footnote omitted).

### B.     Analysis

Relying on *Kristensen*, Plaintiffs assert that Defendant has not provided any evidence of individual consent, and its failure to do so permits a finding that consent is a common issue with a common, classwide answer, which predominates over any individual issues. Specifically, Plaintiffs highlight Defendant's practice of documenting express consent—where an agent receives express consent, he or she is supposed to record both the phone number and the consent in the account notes within Defendant's internal system. According to Plaintiffs, because Defendant cannot locate any record in the account notes that the three Plaintiffs gave consent to an agent of Defendant, there is no evidence that Plaintiffs provided consent to be called by Defendant.

However, this case is distinguishable from *Kristensen* and *Stern* precisely because Defendant has, in fact, provided evidence regarding consent by all three Plaintiffs that demonstrates the need for individualized inquiries on the issue of consent. As Plaintiffs acknowledge, one way for Defendant to demonstrate prior express consent is to show the debtor provided his or her cell phone number to the creditor on an application for services resulting in the debt owed. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and*

*Declaratory Ruling,* 23 F.C.C.R. 559, 564–565 (2008).[6] With respect to Plaintiff Blair, Defendant has provided a declaration on behalf the underlying creditor, DirecTV, with accompanying documents, including the STMS Billing Ledger, Order Management System ("OMS"), and Call Log for Plaintiff Blair's DirecTV account. *See* Walters Decl., ¶¶ 13–18. These documents show that Plaintiff Blair signed up for DirecTV programming on September 16, 2011, and provided a different phone number ending in 1268 when she opened her account. However, there was an inbound telephone call from Ms. Blair to DirecTV on December 20, 2011, the date her account was reinstated, resulting in the following note on the account 9:55 a.m.: "CCI TO UPDATE THE PHONE #." According to DirecTV, this note suggests that Ms. Blair provided updated telephone number as her primary point of contact, and this number was subsequently included in the transfer file provided to Defendant for collections. *See* Walters Decl., ¶¶ 22–27. With respect to Plaintiff Deal, Defendant has also provided a declaration on behalf of the underlying creditor, Verizon, indicating that Plaintiff Deal provided her phone number ending in 0063 as her "can be reached at telephone number" to her Verizon representative on the date she placed her initial order for service. *See* Friedman Decl., ¶¶ 13–17. Verizon subsequently placed Plaintiff Deal's account for collections, and the transfer file included the phone number ending in 0063. Finally, Plaintiff Collins testified in her deposition that her phone number was added to her student loan account

---

[6] In its most recent order released on July 10, 2015, the Federal Communications Commission reiterated this point by explaining:

> The Commission has stated that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." In the ACA Declaratory Ruling, the Commission clarified that a party who provides his wireless number to a creditor as part of a credit application "reasonably evidences prior express consent by the cell phone subscriber to be contacted at the number regarding the debt." That consent is valid not only for calls made by the original creditor, but also for those made by a third party collector acting on behalf of that creditor.

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC 15-72 (July 10, 2015) ¶ 141 (footnotes and citations omitted).

when she contacted them about the loan.  *See* Collins Depo. at 21.[7]

The Court emphasizes that at the certification stage, the ultimate merits of the issue of consent—i.e. whether Plaintiffs Blair, Deal, and Collins did or did not provide consent to be called by Defendant—is not currently before the Court.  Instead, at this stage of the litigation, the Court must determine whether the issue of consent is a common issue with a common answer that predominates over any individual issues.  Courts have recognized that similar TCPA actions involving debt collections "require extensive individual fact inquiries into whether each individual gave 'express consent' by providing their wireless number to the creditor during the transaction that resulted in the debt owed."  *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011).  The evidence offered by Defendant underscores the need for individualized inquiries to determine whether a particular class member provided express consent to receive phone calls from Defendant.  As exemplified above, the underlying debts of the three Plaintiffs arose in varying contexts and in connection with different underlying creditors.  Further, the interaction between Plaintiffs and their respective creditors, and the circumstances in which Plaintiffs Blair, Deal, and Collins may or may not have provided consent, also varies significantly.  Accordingly, determining whether a particular class member provided his or her wireless phone number to an underlying creditor requires an individualized inquiry into the particular circumstances in which the debt arose, and such individualized inquiries predominate over any issue common to the class.  *See Gannon v. Network Tel. Servs., Inc.*, No. 12cv9777-RGK PJWX, 2013 WL 2450199, at *3 (C.D.

---

[7] The Court acknowledges Plaintiffs' position that Plaintiff Collins' deposition testimony was inaccurate, as indicated by the errata, and that Plaintiffs did not provide consent, as evidenced by their respective declarations as well as Plaintiff Deal's deposition testimony that she never gave Verizon her phone number.  This argument, however, goes to the weight of such evidence when addressing the merits of Plaintiffs' claim—i.e. whether Plaintiffs Blair, Deal, or Collins did or did not provide consent—which is not currently before the Court at the certification stage.  For purposes of the instant motion, the existence of evidence of Plaintiffs' respective consent shows individualized inquiries are required to determine if a particular class member provided his or her phone number to the underlying creditor, and thus consented.

14

1  Cal. June 5, 2013); *Versteeg*, 271 F.R.D. at 674 ("This will require an individual review
2  of loan documents and other files related to the underlying debt obligation. These
3  questions require individual inquiries that would predominate over the class action.");
4  *Hicks v. Client Servs., Inc.*, No. 07cv61822, 2008 WL 5479111, at *8 (S.D. Fla. Dec. 11,
5  2008) ("[U]ltimately consent is an issue that would have to be determined on an
6  individual basis at trial.").
7        The Court finds this case distinguishable from cases cited by Plaintiffs.  Plaintiffs
8  rely on *Stemple v. QC Holdings, Incorporated*, No. 12cv1997-BAS WVG, 2014 WL
9  4409817 (S.D. Cal. Sept. 5, 2014), asserting that common issues predominate because
10 Defendant's own records can reveal whether a class member provided consent.
11 However, in *Stemple*, all class members filled out the same loan application, which
12 required loan applicants to list third parties in the "Employment" and "Contacts" section
13 of the loan application.  The common issue before the court was whether the loan
14 applicant provided consent for the defendant to call the third parties by listing their
15 contact information on the loan application.  The court found that resolving this common
16 legal question was possible on a classwide basis by looking to the loan application itself.
17 *Id.* at *8.  Here, however, there is no such common answer with respect to the issue of
18 prior express consent.  As discussed above, Plaintiffs' respective debts arose in different
19 contexts, and therefore require extensive individual inquiries to determine whether a
20 particular class member provided her wireless number to the underlying creditor.
21 Plaintiffs also cite *Van Patten v. Vertical Fitness Group, LLC*, Case No. 12cv1614-LAB
22 (MDD), Doc. No. 54, (S.D. Cal. Nov. 8, 2013), which the Court also finds
23 distinguishable on its facts.  In *Van Patten*, all class members completed the same
24 membership form, and the court noted that the defendant's defense to each class member
25 was identical—consent or lack thereof as evidenced by the same statement on the same
26 membership application form.  *See id*. at 11, 13 ("If Vertical Fitness is right that
27 providing a phone number on a membership agreement constituted consent to receiving
28 the texts, the only individual question is whether the same membership agreement form

1 that all gym members signed contains a simple notation that they ask not to be
2 contacted."). Notably, however, the court devoted a significant portion of its analysis to
3 distinguishing the facts of that case from others including various debt collection cases
4 where, as here, the issue of consent requires extensive individual inquiries into whether
5 each class member gave "express consent" by providing their wireless number to the
6 underlying creditor. *See id.* at 13.

In their reply, Plaintiffs appear to dispute the merits of the consent issue, arguing neither Plaintiffs Blair, Deal, nor Collins ever consented to receive calls from Defendant and citing evidence that contradicts Defendant's position. The Court reiterates that at the certification stage, it expresses no opinions on the ultimate merits of the consent issue. However, Plaintiffs' arguments, including the evidence cited in support of their position, illustrate the need for "mini-trials" into whether each class member provided his or her phone number to the underlying creditor. *See Gene And Gene*, 541 F.3d at 328–29 ("In short, there is no class-wide proof available to decide consent and only mini-trials can determine this issue."). For example, although Plaintiffs maintain that Plaintiff Blair did not call DirecTV on December 20, 2011, they acknowledge that on the same day, she sent an email providing her 6125 cell phone number to the company that assisted in signing her up for DirecTV. According to Plaintiffs, a representative from this company—and not Plaintiff Blair herself—likely provided DirecTV with Ms. Blair's 6125 cell phone number, though Plaintiffs argue it lacked the apparent authority to do so. This entire scenario illustrates the extensive individual factual inquiries required to determine whether a particular class member provided express consent, and such inquiries would unquestionably predominate over any common issues.

Because individualized inquiries would predominate, the Court finds class certification of Plaintiffs' TCPA claims would be improper under Federal Rule of Civil Procedure 23(b)(3).

//
//

## CONCLUSION

For the reasons set forth above, the Court finds Plaintiffs have failed to carry their burden of demonstrating predominance under Rule 23(b)(3). Accordingly, the Court **DENIES** Plaintiffs' motion for class certification of Plaintiffs' TCPA claims.

**IT IS SO ORDERED.**

Dated: August 26, 2015

*[signature]*

Hon. Michael M. Anello
United States District Judge